# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ROBERT A. SHOLAR, GLENDA R. SHOLAR

CIVIL ACTION

VERSUS

14-127-SDD-EWD

PCS NITROGEN FERTILIZER, L.P.,
PCS NITROGEN FERTILIZER, INC.,
PCS ADMINISTRATION (USA), INC. A/K/A
PCS U.S. EMPLOYEES' PENSION PLAN

## RULING

Pending before the Court is a *Motion for Summary Judgment*[1] filed by Defendants, PCS Nitrogen Fertilizer, L.P.,[2] PCS Nitrogen Fertilizer Operations, Inc., PCS Administration (USA), Inc., and the PCS U.S. Employees' Pension Plan.[3] The *Motion* is unopposed. For the following reasons, the Court finds that the Defendants' *Motion* should be granted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[4]

Plaintiff, Robert Sholar, is a former employee and retiree of PCS Nitrogen Fertilizer, L.P. ("PCS Nitrogen"). Sholar and his spouse, Glenda R. Sholar, filed this

---

[1] Rec. Doc. 20.

[2] Defendants contend that Sholar improperly named PCS Nitrogen Fertilizer, L.P. as "PCS Nitrogen Fertilizer Operations, L.P." Rec. Doc. 20-3, p. 1.

[3] Plaintiff Sholar misidentified "PCS Administration (USA), Inc. a/k/a PCS U.S. Employees' Pension Plan" as a single entity. PCS Administration (USA), Inc. is the corporate plan sponsor of PCS U.S. Employees' Pension Plan, which is a defined benefit pension plan. PCS_ADM_RECORD_000019 at "yy" and PCS_ADM_RECORD_000020 at "kkk". Therefore, the proper party defendant is PCS U.S Employees' Pension Plan. In fact, the law is very clear within the Fifth Circuit, that "under Section 1132(a)(1)(B), the Plan is the only proper party defendant to plaintiffs claim." *Dix v. Louisiana Health Services & Indem. Co*., No. 12-319-BAJ-SCR, 2013 WL 5350829, *3 (M.D.La. Sept. 23, 2013). Therefore, although Sholar has sued, in effect, four entities in this matter, the only proper party is the Plan, or PCS U.S. Employees' Pension Plan. Hence, any Judgment rendered shall be *de facto* as to all the named Defendants.

[4] The majority of the facts and procedural history in this case are uncontested.

31359                                            1

*Complaint*[5] against Defendants, PCS Nitrogen L.P., PCS Nitrogen Fertilizer Operations, Inc., PCS Administration (USA), Inc., and the PCS U.S. Employees' Pension Plan, seeking review of the calculation of his benefits under the PCS Plan and the Plan Administrator's decisions denying his claim for an increased benefit amount.

### A. Sholar's Employment History

Originally, Sholar was hired as an employee of Allied Corporation ("Allied") on November 21, 1966, and he participated in the qualified defined benefit pension plan sponsored by Allied ("Allied Pension Plan") through May 31, 1984. Subsequently, Arcadian Corporation ("Arcadian") acquired Allied, and Sholar began participating in the Arcadian Corporation Pension Plan ("Arcadian Plan") on June 1, 1984. Potash Corporation of Saskatchewan, Inc. ("PotashCorp") acquired Arcadian in March of 1997 and merged it into its wholly owned subsidiary, PCS Nitrogen, Inc. PCS Nitrogen then became the sponsor of the Arcadian Plan and, effective January 1, 1999, (i) the Arcadian Plan was merged into the PCS Phosphate Company, Inc. Pension Plan ("Phosphate Plan"), (ii) PCS Administration (USA), Inc. ("PCS") became the sponsor and administrator of the Phosphate Plan, and (iii) the Phosphate Plan was renamed the "PCS U.S. Employees' Pension Plan" ("PCS Plan").

Sholar continued to participate in the merged PCS Plan until he terminated his employment with PCS Nitrogen on February 28, 2013.[6] At the time of his retirement,

---

[5] Rec. Doc. 1.
[6] The Plan uses the term "Termination Date" but all parties appear to concede that the Sholar's "Termination Date" is equivalent to his retirement date. Rec. Doc. 1, p. 2, ¶4; Rec. Doc. 7, p. 2, ¶4; PCS_ADM_RECORD_000140.

31359                                    2

Sholar was over 65 years of age with a combined employment history totaling more than 46 years of service with Allied, Arcadian, and PCS.[7]

**B.  PCS Plan**

Central to the case before the Court are key provisions of the PCS Plan which impose a 35 year benefit service limit ("Article 4.1(a)") and require an offset to any plan participant's earned benefit under the separate non-merged Allied Pension Plan ("Supplement B")[8].

Article 4.1(a) of the PCS Plan provides, in pertinent part, as follows:

> Except as otherwise provided and subject to the provisions of an applicable Supplement … the amount of the monthly Accrued Benefit, when it is expressed as an amount payable in the form of a monthly Single Life Annuity commencing on or after the Normal Retirement Date, shall equal the sum of the Future Service Accrued Benefit and the Past Service Accrued Benefit (with a compensation uplift).

> The sum of the years of Benefit Service that may be taken into account under subsection (b) [definition of "Future Service Accrued Benefit][9] and (c) [provides that the "Past Service Accrued Benefit" is defined in the "applicable Supplement"] may not exceed 35.  If the sum of such years does exceed 35, the Participant's benefit shall be calculated by including either his first 35 years of Benefit Service or his final 35 years of Benefit Service, whichever of those two calculations would result in the larger benefit payable to the Participant, determined as of the Participant's Annuity Starting Date.[10]

---

[7] Sholar has alleged and argued that his period of service was 46.25 years, whereas the Committee deemed Sholar to have 46.33 years of service with PCS, Arcadian, and Allied.

[8] PCS_ADM_RECORD_000093.

[9] 4.1(b) "Future Service Accrued Benefit.  The term 'Future Service Accrued Benefit' means an amount equal to the product of—(1) 1.5 percent (.015) of the Participant's Final Average Monthly Compensation, determined using Compensation after 1998 (or such other date specified in an applicable Supplement); and (2) the Participant's years of Benefit Service while an Active Participant after 1998 (or such other date specified in an applicable Supplement)."  PCS_ADM_RECORD_000026.

[10] PCS_ADM_RECORD_000026 (Section 4.1(a), Amount of the Accrued Benefit).

Supplement B also governed Sholar's Accrued Benefit calculation.  Under Section B.2(a), "[i]f a Participant accrued a benefit under the Arcadian Plan, the amount of the Participant's monthly Accrued Benefit shall equal the greater of—

    (1) the sum of –

        (A)      the Past Service Accrued Benefit determined under the Arcadian Plan Formula (as described in subsection (b) below), and

        (B)      the Future Service Accrued Benefit [described in 4.1(b)], and

    (2) the Frozen Arcadian Formula Accrued Benefit as described in subsection [B.2(c)][which "means the amount determined under the Arcadian Plan Formula by using the Participant's Final Average Monthly Compensation, Social Security Covered Compensation, and Benefit Service as of March 31, 2000, or if earlier, the date active participation in this Plan ceases."].

    (3)

Section B.3(a), which describes the Arcadian Plan Formula, requires an offset for participants of the Allied and Olin Pension Plan in an amount described as follows under Section B.3(d):

    (d)      Offset for Benefits Payable Under Other Plans.

        (1)      Allied and Olin Pension Plans.  If a Participant—

            (A)      is credited with Benefit Service under this Plan for a period of employment with the Allied Corporation or Olin Corporation, and

            (B)      accrued a nonforfeitable benefit under a qualified defined benefit pension plan maintained by Allied or Olin for such period of employment,

            then the amount under this subsection shall equal the amount of the Participant's nonforfeitable accrued benefit under such Allied or Olin plan.[11]

---

[11] PCS_ADM_RECORD_000096.

### C. Sholar's Plan Benefit Selection

By letter dated August 9, 2013, Sholar received his retirement benefit election package which described various benefit elections based on a Single Life Annuity in the amount of $4,634.97.   A Calculation Summary was included in the package which illustrated how his pension benefit was calculated.[12]   The Calculation Summary included results of the formula applied to Sholar's first (rows A and B) and last (rows C and D) 35 service years.[13]   In Sholar's case, the higher benefit was produced using his benefit service calculated backwards 35 years from his February 28, 2013 employment termination date, or rows C and D in the Calculation.[14]   The Allied Pension Plan offset was also included, totaling $780.61 (row E).[15]   The resulting Single Life Annuity totaled $4,643.97.

Of the various benefit election options provided, on October 23, 2013, Sholar and his spouse selected a 75% joint and survivor annuity with a ten-year certain period effective retroactively March 1, 2013.   Based on this election, Sholar began receiving $4,081.12 per month.  However, under the section authorizing the plan to pay his pension, Sholar included a handwritten note which states as follows:

> I protest the subtraction of total credit of Honeywell Retirement Benefits.  My period of service was 46.25 not the 35 calculated by the Retirement Plan. Thus 11.25 years by PCS calculations so it should not be subtracted from PCS Retirement Benefit.[16]

---

[12] PCS_ADM_RECORD_000140.
[13] PCS_ADM_RECORD_000140.
[14] PCS_ADM_RECORD_000140.
[15] PCS_ADM_RECORD_000140.
[16] PCS_ADM_RECORD_000139.

On the Benefit Calculation Summary, Sholar circled the $780.81 Allied offset amount and wrote "This is protested."[17]

### D.   Exhaustion of the Plan's ERISA Administrative Procedures[18]

Under the PCS Plan, written claims for benefits are made to the Committee,[19] which is also the designated "named fiduciary" and "plan administrator" as used under ERISA.[20]   The Committee agreed to treat Sholar's handwritten note challenging the 35 year calculation limit as a claim for benefits under the Plan.[21]   During its February 11, 2014 Employee Benefits Committee meeting, the Committee discussed and approved denial of Sholar's claim.[22]  The Committee issued its determination letter on July 25, 2014 which contained its reasons for denying Sholar's claim.[23]

In the letter, the Committee explained the construction and application of the Plan's 35 year service limitation under Section 4.1 of the Plan and the Supplement,[24]

---

[17] PCS_ADM_RECORD_000140.

[18] Article 12 of the Plan sets forth the procedure for Plan Participants to submit a claim for benefits and the administrative review process.  Pursuant to Article 12.4(a), "[n]o legal or equitable action for retirement benefits under the Plan may be brought unless and until the claimant has completed all of the requirements under [Article 12]." PCS_ADM_RECORD_000073. Although Plaintiff Sholar filed his lawsuit before he had exhausted the Plan's ERISA Administrative Procedures, the parties subsequently agreed "that a review of the original determination be conducted according to the administrative rules of PotashCorp Employee Benefits Committee."  Rec. Doc. 14.  As a result, on September 9, 2014, the Court agreed to stay the deadlines in order to allow Sholar to exhaust all administrative remedies available under the Plan.  Rec. Doc. 16.  *See also*, Rec. Doc. 18, in which the Court granted the extension of additional deadlines, including Defendants' date to produce the Administrative Record to Plaintiff and the date for filing the Administrative Record with the Court.

[19] The Committee is also known as the "Employee Benefits Committee."   Article 13.1 of the Plan. PCS_ADM_RECORD_000074.

[20] Article 12 Claims and Review Procedures PCS_ADM_RECORD_000072-000073.

[21] PCS_ADM_RECORD_0000165.

[22] PCS_ADM_RECORD_000150-000162.

[23] PCS_ADM_RECORD_000164-000168.

[24] The Committee also stated how "[u]nder the terms of the PCS Pension Plan, a participant's normal retirement benefit is equal to (i) the amount the participant earned before January 1, 1999 under the Arcadian Plan formula (the 'Pre-1999 Benefit'), plus (ii) the amount the participant earned on and after January 1, 1999 under the PCS Pension Plan formula (the 'Post-1998 Benefit')." PCS_ADM_RECORD_000165.  The "Pre-1999 Benefit Formula" was defined as "1.1% x years and months of pre-1999 benefit service x final average compensation plus .4% x final average compensation in excess of covered compensation x years and months of pre-1999 benefit service."  PCS_ADM_RECORD_000165. The "Post-1998 Benefit Formula" was set forth as "1.5% x years and months of benefit service after 1998

31359                                             6

emphasizing the fact that "[t]he total amount of years of benefit service that may be taken into account for purposes of calculating a participant's Pre-1999 Benefit and Post-1998 Benefit is limited to 35 years."[25]   Additionally, the letter discussed the mandatory offset set forth in the Supplement for those participants "credited with benefit service under the PCS Pension Plan for a period of employment with Allied" and who have "earned a vested benefit under the Allied Pension Plan for such period of employment."[26]   The Committee further explained that this offset "applie[d] regardless of whether the participant's combined pre-1999 and post-1998 benefit service exceeds 35 years."[27]   The Committee ultimately concluded that Plan terms had been applied correctly to Sholar as follows:

> Although you terminated with 46.333 years of benefit service, only 35 years is permitted to be used to calculate your total pension benefit (i.e, Pre-1999 Benefit *plus* Post-1998 Benefit).   As described in the Calculation, your pension benefit was calculated in two ways, using your benefit service counted forward 35 years from your November 11, 1966 hire date with Allied (rows A and B in the Calculation), and your benefit service counted backwards 35 years from your February 28, 2013 termination date (rows C and D in the Calculation).   In this instance, the PCS Pension Plan correctly used your benefit service counted backwards 35 years from your February 28, 2013 termination date because it produced the higher benefit. Moreover, the PCS Pension Plan was required to offset your benefit totaling $780.61 payable under the Allied Pension Plan (row E in the Calculation) because your period of employment with Allied from November 21, 1966 through May 31, 1984 was taken into account in determining your total pension benefit.[28]

The determination letter also advised Sholar of his right to appeal the Committee's decision and the procedure for doing so.[29]

---

(up to 35 years) x final average compensation (determined using compensation after 1998)." PCS_ADM_RECORD_000166.
[25] PCS_ADM_RECOR D_000166.
[26] PCS_ADM_RECORD_000166.  Referring to Sections B.3(a) and B.3(d).
[27] PCS_ADM_RECORD_000166.
[28] PCS_ADM_RECORD_000166-000167.
[29] PCS_ADM_RECORD_000167-000168.

31359                                    7

By letter dated September 5, 2014, Sholar took an administrative appeal of the Committee's July 25, 2014 decision denying his claim.[30]  Sholar offered no additional documents or records relating to his claim for benefits.[31]  Instead, he stated that the basis for his appeal was the following:

> Mr. Sholar is hereby appealing the decision denying his claim for 46.25 years of service with the company and its ancestors in title to the PCS facility at Geismar, Louisiana.  This denial is discriminatory and Mr. Sholar should not be penalized for his extensive time in service but rewarded with the benefits he is entitled to.[32]

At the November 4, 2014 Employee Benefits Committee meeting, Sholar's appeal was considered and denied.[33]  The Committee's reasons for denying Sholar's appeal were subsequently issued in a November 6, 2014 letter.[34]  The Committee concluded that Sholar's pension benefit plan had been calculated correctly under the terms of the PCS Plan.  The Committee explained that it "[was] bound to follow the terms of the PCS Pension Plan when paying all benefits" and that "[i]n this instance, the PCS Pension Plan terms are clear regarding the application of the 35-year limit on benefit service and the Allied Pension Plan offset."[35]  The Committee further stated that "the Committee [was] required to administer the PCS Pension Plan consistently for all participants and [was] not permitted to make any exceptions."[36]  Under the terms of the Plan, the Committee's

---

[30] PCS_ADM_RECORD_000329-000441.
[31] In the Committee's decision letter, Sholar was advised that "[i]n connection with [his] appeal, [he had] the right to submit written comments, documents, records, and other information relating to your claim for benefits."  PCS_ADM_RECORD_000167.  In the letter denying his appeal, the Committee noted that "[t]he appeal does not present any new evidence, but reiterates Mr. Sholar's contention that all of his service should be included for purposes of calculating his benefit under the PCS Pension Plan." PCS_ADM_RECORD_000443.
[32] PCS_ADM_RECORD_000329.
[33] PCS_ADM_RECORD_000464-000469.
[34] PCS_ADM_RECORD_000442-000446.
[35] PCS_ADM_RECORD_000445.
[36] PCS_ADM_RECORD_000445.

31359                                          8

denial of Sholar's appeal for larger benefits was a final decision from which Sholar could pursue his civil action.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37]  "An issue is material if its resolution could affect the outcome of the action."[38] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[39]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[40]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[41]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[42]

---

[37] Fed. R. Civ. P. 56(a).

[38] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[39] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[40] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25).

[41] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[42] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

31359                                        9

Notably, "[a] genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[43] The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[44] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[45] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[46]

## B. ERISA Standard of Review

ERISA provides federal courts with jurisdiction to review determinations made under employee benefit plans.[47] Under ERISA, "[w]hen the language of the plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."[48] Abuse of discretion is the appropriate standard in this case because, under the PCS Plan, the Committee[49] is vested with "all such powers and discretion as may be necessary to carry out the provisions of the Plan."[50] In particular, the Committee is given vast discretion to

---

[43] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[44] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[45] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[46] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[47] 29 U.S.C. § 1132(a)(1)(B).

[48] *High v. E-Systems, Inc.* 459 F.3d 573, 576 (5th Cir. 2006).

[49] As previously mentioned, pursuant to the PCS Plan, the Committee is identified as "the 'named fiduciary' and the 'plan administrator' as those terms are used under ERISA." PCS Plan, Article 13.1 [PCS_ADM_RECORD_000074].

[50] Article 13.6(a). PCS_ADM_RECORD_000074.

determine whether an applicant is entitled to benefits,[51] "has the final authority and discretion to authorize or disallow benefit claims,"[52] and is granted "the exclusive right and discretion to make any finding of fact necessary or appropriate for any purpose under the Plan."[53]  Moreover, the Committee also has "the exclusive right and discretion to interpret the terms and provisions of the Plan" and "any and all questions arising under the Plan."[54]  Accordingly, the Court will reverse the Committee's decision only for abuse of discretion.

Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail."[55] "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence."[56]  "Substantial evidence" in the context of an ERISA case means "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[57]  "Ultimately, a court's '"review of the [Plan] administrator's decision  need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.'"[58]

---

[51] Article 13.6(a).  PCS_ADM_RECORD_000075.
[52] Article 13.6(a).  PCS_ADM_RECORD_000075.
[53] Article 13.6(b). PCS_ADM_RECORD_000075.
[54] Article 13.6(b). PCS_ADM_RECORD_000075.
[55] *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004)(hereinafter *Ellis*).
[56] *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)(quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999))(hereinafter *Holland*).
[57] *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir. 2014)(quoting *Ellis*, 394 F.3d at 273).
[58] *Id.* (quoting *Holland*, 576 F.3d at 247 (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)).

Within the Fifth Circuit, courts use a two-step review process in determining whether a benefit decision involving the interpretation of a plan is an abuse of discretion.[59] Initially, the court must determine whether the plan administrator gave the plan the legally correct interpretation.  In answering this question, the court must consider the following factors: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."[60]  If, after applying these factors, the court concludes that the plan administrator's interpretation of the plan was legally correct then "the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the [plan] was not an abuse of discretion."[61]  If, however, the Court finds that the plan administrator's determination was not legally correct, then "three additional factors become relevant" to determine whether the administrator abused his discretion.[62]  These factors are: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith."[63] In conducting its analysis, "no court may substitute its own judgment for that of the plan administrator."[64]

---

[59] *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637-638 (5th Cir. 1992)(hereinafter *Wildbur*).
[60] *Ellis*, 394 F.3d at 270 (citing *Wildbur*, 974 F.2d at 637-38).  The abuse of discretion standard has been applied in assessing a plan administrator's determinations in disputes over defined pension benefit calculations.  *Gosselink v. American Tel. & Tel., Inc.*, 272 F.3d 722 (5th Cir. 2001).
[61] *Id.* at 270.
[62] *Wildbur*, 974 F.2d at 638.
[63] *Id.* (citing *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 445-48 (5th Cir. 1989).
[64] *McCorkle*, 757 F.3d at 457-458.

Additionally, in the Fifth Circuit, a "plan administrator's factual determinations are always reviewed for abuse of discretion."[65]  And when resolving factual controversies, the court's review is confined "to the evidence before the plan administrator."[66]

### C.  Merits

"While the Court views the evidence in the light most favorable to the non-moving party under the summary judgment standard, its review is still limited to the highly deferential abuse of discretion standard applied in ERISA cases."[67]   In their unopposed *Motion*, the Defendants contend that the Committee did not abuse its discretion in denying Sholar's claim for additional Plan benefits.  For the following reasons, the Court agrees.

Initially, the Court must consider whether the Committee gave the PCS Plan a legally correct interpretation.  Sholar has offered no evidence showing that the Committee has failed to give the Plan a uniform construction. The Plan's express language specifically limits the sum of years of benefit service to 35 years.  The Plan states that "[i]f the sum of such years does exceed 35, the Participant's benefit shall be calculated by including either his first 35 years of Benefit Service or his final 35 years of Benefit Service, whichever of those two calculations would result in the larger benefit payable to the Participant."[68]   Additionally, the Supplement mandates an Allied offset.[69]  The Calculation Summary provided to Sholar as part of his original benefit election package summarized the application of these factors to Sholar's particular earnings and information.  Sholar

---

[65] *Vercher v. Alexander & Alexander*, 379 F.3d 222, 226 (5th Cir. 2004).
[66] *Vega v. Natl' Life Ins. Services, Inc.*, 188 F.3d 287, 299 (5th Cir. 1999); *see also*, *Wildbur*, 974 F.2d at 639.
[67] *Bistany v. Reliance Standard Life Ins. Co.*, 55 F.Supp.3d 956 (S.D.Tex. Sept. 23, 2014).
[68] PCS_ADM_RECORD_000444.
[69] Even the summary plan description for the Plan provided consistent information regarding the required 35 year service limitation factor and the required reduction for Allied service years. PCS_ADM_RECORD_000123.

31359                                          13

has failed to offer any evidence suggesting that the 35 year limitation and the Allied offset were solely applied to him.  In fact, in denying Sholar's appeal, the Committee explained that it "[wa]s bound to follow the terms of the PCS Pension Plan when paying all benefits" and that "[i]n this instance, the PCS Pension Plan terms are clear regarding the application of the 35-year limit on benefit service and the Allied Pension Plan offset."[70] The Committee concluded that, for it to disregard these very provisions under the Plan, it would be making an "exception" for Sholar.[71]  Hence, the Court finds that the Committee uniformly construed Article 4.1 and Supplement B of PCS' Plan, and that the first factor weighs in favor of the Committee.

As for the second factor, the Court finds that the Committee's benefits calculation is consistent with the fair reading of the PCS Plan.  The Committee's decision to uphold the original calculation which applied the 35-year limitation period and included the Allied offset is completely supported by the Plan's terms and conditions.  As previously discussed, Sholar's pension benefit was calculated two ways, using his initial 35 years of service and his last 35 years of service.  Of these two calculations, the latter 35 years produced the higher benefit.  Under the provisions of Supplement B, an Allied offset was also applied to Sholar's total pension benefit because of his period of employment with Allied.  Therefore, the Court finds that the Committee construed the provisions of the Plan, specifically Article 4.1 and Supplement B, in a manner consistent with a fair reading of the Plan.

In considering the third factor, the Court must determine whether Sholar's proposed interpretation, or ignoring the 35-year limitation and Allied offset, would give

---

[70] PCS_ADM_RECORD_000445.
[71] PCS_ADM_RECORD_000445.

rise to substantial costs to the Plan that are unanticipated under the Plan's plain meaning. In this case, the Court finds that to ignore these express terms of the Plan would undoubtedly lead to greater, unanticipated costs for the Plan.  To disregard the 35-year limitation and Allied offset would inevitably result in the Plan paying larger benefits to Plan participants and would allow those participants with credited years of service with Allied to obtain a windfall by obtaining a benefit under both the Allied and PCS Plans.  The Court agrees with PCS that to ignore these key provisions under the Plan would "threaten the very integrity of the Plan terms."[72]  Hence, the Court finds that the unanticipated costs factor is favorable to the Defendants.

Based on the foregoing, the Court finds that the Committee's interpretation and application of the Plan is legally correct.  Therefore, the Court's analysis ends because no abuse of discretion occurred.

The Court further finds that the Committee's factual determinations, specifically the credited years of service of 46.33, the Allied offset benefit of $780.61, and the 35 years calculations, are supported by the evidence in the administrative record.[73]  Sholar has offered no evidence at any administrative proceeding or in the instant matter so as to dispute these calculations.  Thus, these factual determinations are entitled to deference by the Court.

Accordingly, the Court shall grant the Defendants' *Motion* because the Committee did not abuse its discretion in denying Sholar's claim for an increased benefit.

---

[72] Rec. Doc. 20-3, p. 18.
[73]  The evidence in the administrative record supports the Committee's factual findings. PCS_ADM_RECORD_00035; 000140; 000164-000167; 000442; 000463.

31359                                         15

III.    **CONCLUSION**

Wherefore, the Court grants the Defendants' *Motion for Summary Judgment*[74] and dismisses Plaintiffs' ERISA claims with prejudice.

Signed in Baton Rouge, Louisiana on <u>March 23, 2016</u>.

<u>*Shelly D. Dick*</u>

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[74] Rec. Doc. 20.

31359                                    16